## THE OWEGO.

(District Court, E. D. Louisiana, New Orleans Division. August 27, 1923.)

No. 16748.

1. Maritime liens ⊚⟶66—Claimants of liens may contest allowance of other liens.
   Persons claiming maritime liens have standing in court to contest allowance of each other's claims. .

2. Shipping ⊚⟶30½—Mortgage Act should be liberally construed.
   The Ship Mortgage Act of June 5, 1920, is remedial and should be liberally construed, though its provisions should be complied with.

3. Maritime liens ⊚⟶33—No lien for time lighter was not actually serving ship.
   If owner of lighter is entitled to lien on ship in any case, where lighter is hired by agent of the ship, or merely stands by, or through negligence is not promptly returned after her use is terminated, there is no lien for the time she was not actually serving the ship.

4. Maritime liens ⊚⟶65—Presumption indulged that lighter was promptly unloaded.
   The presumption must be indulged that lighter for whose use maritime lien is claimed was promptly unloaded after leaving ship.

5. Maritime liens ⊚⟶33—No lien for time lighter kept loaded for benefit of consignee.
   If lighter used in unloading ship was kept loaded for benefit of consignee of freight, the ship was not thereby benefited, and there was no lien for use of the lighter for time she was so kept loaded.

6. Maritime liens ⊚⟶65—Burden on claimant to show necessity of services.
   One claiming maritime lien on ship has burden of proving necessity for the services rendered, and this rule has not been changed by Act June 23, 1910 (Comp. St. §§ 7783–7787), relative to such liens, or Act June 5, 1920, relative to mortgages.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Maritime liens ⬯65—No presumption of necessity for use of lighter hired by agent.**

While there is presumption of necessity for supplies usually needed by ship and furnished on master's order, there is no presumption of necessity for use of lighter, especially when hired by ship's agent, and concrete facts should be shown from which necessity may be found.

**8. Maritime liens ⬯6—Ship's agent held within general rule and not entitled to lien.**

Ship's agent at particular port, who handled her for several trips collecting freight money and charter hire for owner's account and making disbursements for each trip and maintaining running account at all times, *held* within general rule that ship's agent is presumed to have given credit to owner, and is not entitled to lien for advances.

**9. Maritime liens ⬯38—Contracting stevedore's lien does not prime mortgage.**

Ship Mortgage Act June 5, 1920, § 30, including wages of stevedore employed by owner, operator, etc., in maritime liens which prime mortgage, is intended for protection of the actual laborers, and does not apply to lien of contracting stevedore.

**10. Maritime liens ⬯6—General rule denying lien to ship's agents held to apply.**

Where there was no direct testimony that owners of vessel were notoriously insolvent, or that ship's agent at particular port knew it or that their advances were solely on ship's credit, and part of them were made after the ship had left such port, the general rule that ship's agents are not entitled to lien applied.

In Admiralty. Libel by the Everett Supply Company against the steamship Owego, in which various interventions were filed. Decree allowing certain liens in accordance with the opinion.

Dufour, Goldberg & Kammer and Edwin C. Hollins, all of New Orleans, La., for New York Trust Co.

Dart, Kernan & Dart, of New Orleans, La., for Wm. H. Cowley.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., for Daniel Bacon and Empressa Maritima Bacon.

Eugene S. Hayford, of New Orleans, La., for Marine Iron Works.

Terriberry, Rice & Young and Walter Carroll, all of New Orleans, La., for Holland, Lopez & Co.

FOSTER, District Judge. In this case a libel was filed against the steamship Owego by a materialman. She was subsequently sold under admiralty process and realized $30,000. Various interventions have been also filed against the ship, asserting liens amounting to over $150,000, so that the fund is inadequate to satisfy them all. The matter was referred to a commissioner to take the evidence and rank the liens and now comes up on exceptions to his report. A number of liens allowed have not been objected to and require no further consideration.

The New York Trust Company, holder of a mortgage on the vessel, objects to the allowance of the claims of Holland, Lopez & Co., Daniel Bacon, and Empressa Maritima Bacon as priming the mortgage.

Wm. H. Cowley, whose claim was disallowed, excepts to the report for that reason, objects to the recognition of the mortgage, and objects to the allowance of the claims of Empressa Maritima Bacon and the Marine Iron Works.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Of course, all persons claiming liens have standing in court to contest each other's allowances. The Lottawanna, 20 Wall. 201, 22 L. Ed. 259.

## Marine Iron Works.

On the facts in the record, unnecessary to restate, the objection to this claim is without merit.

## New York Trust Company.

[2] Prior to the enactment of the Ship Mortgage Act (Act June 5, 1920 [41 Stat. 1000]), ships were about as available for credit for general purposes as the snows of last December. The object of that statute was to enable the owners of vessels to use the vast capital invested in them with at least a part of the facility enjoyed by investors in structures on land. To that end the statute is remedial and should be liberally construed, although all of its provisions as to registry and indorsement on the ship's papers should be complied with. · The commissioner's finding as to the validity of this mortgage is correct and the New York Trust Company is entitled to be paid out of the remnants.

## Daniel Bacon.

This claim is for the services of a tug in assisting the vessel in departing the harbor of Havana, $200, and for the services of a launch in conveying laborers to her, $16. The services of the tug were undoubtedly necessary and there is evidence to show the charge was customary. There may be some doubt as to the services of the launch, but considering the amount I am not disposed to question it in view of the commissioner's finding.

## Empressa Maritima Bacon.

This claim is for hire of the lighter E. M. B. No. 2 from November 10, 1920, to December 22, 1920, 43 days at $200 per day, pursuant to a verbal agreement with the ship's agents at Havana, $8,600, for towing that lighter and five other lighters from the Owego in Havana Harbor, presumably to the dock, and for transporting some lightermen to the Owego.

[3] Assuming that the owner of a lighter may be entitled to a lien in some cases it does not follow that the lien exists in every case. Usually literage is a change on the cargo, and the lighterman would have his lien on that. If the lighter was hired by the agent of the ship and then merely stood by, or if, after her use had terminated, through negligence she was not promptly returned, no lien would be created for the time she was not actually serving the ship. Not every maritime contract creates a lien. The Yankee Blade (Vandewater v. Mills) 19 How. 82, 15 L. Ed. 554; The Dixie, 249 Fed. 46, 161 C. C. A. 106.

[4, 5] The evidence to support this claim consists solely of the testimony of Stoddard, president of the intervener, taken under commission. He states the lighter was hired by a verbal contract with the ship's agents at a rental ·of $200 per day, confirmed by letter. The letter referred to, however, is in no sense a confirmation. It amounts

at most to notice by intervener after the lighter was returned that the charge would be made. Stoddard further states that the lighter was placed alongside the Owego in Havana Bay at 7:15 a. m. November 10, 1920, and continued in the service of the ship until December 22, 1920, when she was redelivered to the intervener; that the lighter was used to receive cargo discharged from the Owego.

He makes the further statement that the services of the lighter were necessary to complete the voyage of the Owego, but that is a general expression of opinion of no probative value. Annexed to the deposition is a bill for towage which shows that the E. M. B. No. 2 was towed from the Owego on November 22d at a charge of $10. The bill shows that four other barges were towed from the Owego on December 1st, and still another barge on December 3d. Where was the E. M. B. No. 2 during this time and up to December 22d? What was the service rendered the ship? There is nothing to show that she was again returned to the Owego. The presumption must be indulged that the lighter was promptly unloaded after leaving the ship, otherwise there would have been no sense in loading and dispatching her in the first place. If she was kept loaded for the benefit of the consignee of the freight, that would be of no benefit to the ship.

[6, 7] It is well settled that one claiming a lien on a ship has the burden of proving the necessity for the services rendered. The Aurora, 1 Wheat. 96, 4 L. Ed. 45; The Grapeshot, 9 Wall. 129, 19 L. Ed. 651. The Acts of June 23, 1910 (Comp. St. §§ 7783–7787), and June 5, 1920, made no change in the law in this respect. Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. 97. That burden has not been met. When supplies usually needed by a ship are furnished on the order of the master, there is a presumption of necessity; but there would be no presumption of necessity for the use of a lighter, especially when hired by the agent. Concrete facts should be shown from which the court can form its own opinion. The most that can be considered proved is hire from November 10th to November 22d, 13 days. The exceptions to this item will be sustained to the extent of reducing the amount allowed by $6,000.

### W. H. Cowley.

[8] This claim was denied by the commissioner on the ground that Cowley was the ship's general agent or husband. The facts amply support the finding. Cowley was the agent in New Orleans for the vessel and handled her for seven trips, collecting freight money, and even charter hire, for account of the owner, making disbursements for each trip. If the transactions of one trip left a balance in his favor, Cowley charged it up to the next trip, maintaining a running account at all times.

While a stranger advancing money to pay off admiralty liens is usually entitled to a lien, it is well settled that a general agent is not entitled to a lien for advances, even when used to pay seamen's wages, as the presumption is that they are made on the credit of the owner. The rule is clearly stated in The Esteban de Antunano (C. C.) 31 Fed. 920, decided by Judge Pardee, and The Raleigh (D. C.) 32 Fed. 633, decided

by Judge Brown, both of whom are regarded as eminent authorities. There are many other cases to the same effect. See China Mutual Ins. Co. v. Ward, 59 Fed. 712, 8 C. C. A. 229; The Centaurus (D. C.) 282 Fed. 883, affirmed (C. C. A.) 291 Fed. 751; The Fairoaks, A. M. C. vol. 1, No. 2, p. 141; The Gyda (D. C.) 235 Fed. 266. In fact, all the reported cases recognize the general rule, although some cases distinguish the facts and allow a lien, even to part owners, on equitable grounds. Two cases relied on by counsel, The Puritan (D. C.) 258 Fed. 271, and The Ascutney (D. C.) 278 Fed. 991, are easily distinguished. In the first case it was stipulated the advances were solely on the credit of the vessel. Naturally, there was nothing for the court to do but allow the lien. In the second case, the agents were appointed by the captain and did not know the owners at all, and it would seem the agency consisted solely in paying bills for absolute necessities. It would also seem the ship was not allowed to leave port before the lien was enforced.

The facts in the Estaban de Antunano and the Raleigh, supra, are analogous to those in this case. There is nothing to take this claim out of the general rule. The finding of the commissioner will be approved.

## Holland, Lopez & Co.

This is a claim for money advanced the captain to pay the crew and for payments of supply bills and other expenses. The commissioner disallowed all of the claim except $1,200 for seamen's wages and $4,731.24 for stevedoring services, on the theory that the payments were made after the mortgage was recorded and except as above indicated do not prime it.

Objection is made to this claim on the ground that Holland, Lopez & Co. were general agents of the ship and not entitled to a lien for advances. As the question presented is close, it is advisable to consider other features of the claim.

[9] The evidence shows that the stevedoring charges allowed by the commissioner were paid to E. M. Rawley & Co. in two lump sums. There can be no doubt they were contracting stevedores. The Ship Mortgage Act (Act June 5, 1920, § 30) in defining "preferred maritime liens" priming the mortgage includes "wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel." This makes no change in the law except as to the ranking of the lien. Stevedores employed by the captain or owner have always enjoyed a lien on the vessel for their wages, but when employed by an independent contractor the lien has been denied. The Hattie M. Bain (D. C.) 20 Fed. 389. Congress evidently intended to protect the actual laborer and to put him on a par with seamen. The reason for this is clear. A laborer could not be expected to make inquiry and to inspect the ship's papers before doing a day's work.

The same reason does not apply to a contracting stevedore. He is in the same position as materialmen and repairmen whose liens are not preferred to a prior mortgage, and he is entitled to no greater rights. This item should have been rejected by the commissioner.

It is also doubtful that there is sufficient evidence to show that the

money advanced to the captain was actually paid to the crew. The witnesses who so testified could not know it of their own knowledge, and the testimony of the captain was not taken. It is not shown that he was not available as a witness.

[10] The question of agency apparently was not called to the attention of the commissioner, doubtless because it is not mentioned in the libel. It appears from the deposition of Barney Holland that Holland, Lopez & Co. were the agents of the Owego in Tampico and handled her and disbursed her during her stay in that port.

The point is made that the freight money on this voyage was collected in advance in New Orleans. This intervener offers no proof to that effect, but it may be inferred from the somewhat involved testimony of Cowley. It may also be inferred from the same testimony that the freight was collected in Tampico and remitted intact to Cowley or to the owners in New York. The further point is made that the owners were notoriously insolvent. There is no direct testimony to this effect or that Holland, Lopez & Co. knew it. Furthermore, there is no evidence that the advances were solely on the credit of the ship. Holland had the opportunity and did not so testify. There is no evidence as to when the Owego left Tampico, but it is shown she arrived in New Orleans May 24th. A number of bills were paid May 21st and some in June. Quite likely all of these bills were paid after her departure. If the credit was solely on the security of the vessel, it is hardly possible she would have been allowed to depart without settlement or that bills for her account would be paid after she was gone, especially when there was no probability of her return. I see nothing to take this case out of the general rule. The finding of the commissioner will be disapproved and the lien denied.

There will be a decree in accordance with this opinion.