## THE FRANK BRAINERD.

### Petition of GORDON & HUTCHINS.

(District Court, D. Maine, S. D.    January 16, 1925.)

No. 946.

1. **Maritime liens** ⟐⟐37—**Lien cannot be enforced by part owner as against a stranger having a lien.**

A lien on a vessel cannot be enforced against a stranger to the title having a maritime lien, by one who, as part owner, is himself liable for the debt underlying such lien.

2. **Maritime liens** ⟐⟐49—**Lien claimants held not entitled to challenge validity of attachment.**

Claimants of a lien, who waited until the vessel had been sold under attachment by libelant, and then filed an intervening libel, claiming an interest in the proceeds, are not in position to challenge the maintenance of the attachment by libelant by continued possession after seizure.

In Admiralty. Suit by the Camden Yacht Building & Railway, Inc., against the schooner Frank Brainard. In the matter of the intervening petition of Gordon & Hutchins. Petition dismissed.

Allan L. Bird, of Rockland, for libelant.
Albert F. Flint, of Boston, Mass., for interveners.

HALE, District Judge. On May 21, 1924, a libel was filed by the Camden Yacht Building & Railway, Inc., against the schooner Frank Brainerd, to recover for repairs made to the schooner in the year 1923 and the early part of 1924; the total claim being for about $17,000. A warrant of attachment issued, and the vessel was seized by Gilbert A. Powers, United States deputy marshal. One Stover, the treasurer of the libelant corporation, was appointed keeper of the vessel, without pay.

On October 18 the vessel was sold at a United States marshal's sale on the above process, and brought the sum of $9,000. After deducting the marshal's fees and clerk's fees, the above sum is now in the registry of this court for distribution.

The schooner is a small three-masted schooner, and at the time in question was owned by different parties, including the petitioners Gordon & Hutchins. In the year 1922 the vessel went ashore and was nearly a total wreck; it was salved later, and towed into the yard of the libelant, where repairs were made which form the subject of this suit. The amount in the registry is inadequate to satisfy all the claims in full, and the question of priority is raised between the claim of the libelant and the claim of the interveners.

It appears that Capt. Stevens, the master and owner of one-fourth of the vessel, tried to get the other owners to pay bills on the vessel, but was unable to do so. During the period between the time when the vessel was libeled and finally sold, Capt. Stevens tried unsuccessfully to raised funds with which to bid the vessel in at the marshal's sale. Knowing that the ship would need new sails, he ordered certain sails from Gordon & Hutchins, who were co-owners with the master. The sails were shipped to Camden, where the vessel then was, by way of the Eastern Steamship Lines. The sails were never actually put upon the ship, but remained on the docks of the Eastern Steamship Lines until they were destroyed by fire in August, 1924.

The case presents the following questions:

(1) Have the interveners, Gordon & Hutchins, as part owners of the vessel, a right to a maritime lien upon it?

(2) Were the sails "furnished" to the ship?

(3) Was the attachment on the ship maintained by the libelant? In other words, did the keeper, appointed by the marshal, retain custody of the ship?

[1] I. Can the interveners, part owners, maintain a lien in equality with that of the libelant?

It is unquestioned that the libelant, the Yacht Building Company, furnished necessary repairs for the vessel. It is not a part owner. It is therefore, within the meaning of the law, a stranger to the title. The amount for which the vessel was sold, and which is now in the registry, is inadequate to satisfy all the claims in full. Gordon & Hutchins, the interveners, are part owners of the vessel. The authorities are in conflict whether a part owner can, under any circumstances, obtain a maritime lien against his partners. But it is settled on principle, as well as authority, that no such lien can be enforced against a stranger to the title, having a maritime lien, by one who, as part owner, is himself liable for the debt underlying such lien. The Cimbria (D. C.) 214 F. 131, 132; Petrie v. Steam Tug Coal Bluff (D. C.) 3 F. 531; The Benton, 3 Fed. Cas. 256, No. 1,334; The Queen of St. Johns (C. C.) 31 F. 24.

In The Gyda, 235 F. 266, this court rejected the claim of a stockholder, owner in a vessel, he being treasurer and general manager of the company owning the vessel, and cited the above cases, which state the general rule applying to claims of part owners.

Upon an examination of the proofs in the matter before me, I find nothing which takes the case out of the general rule established by the cases cited. The petitioners, part owners of the schooner, admit that they are under a liability to pay their share of the schooner's indebtedness. The reason for the rule is evident: A part owner owes a part of a stranger's bill, and, where there are insufficient funds, the part owner should not be entitled to take the funds from a stranger for the benefit of the part owners.

[2] This disposes of the case. But it is well to refer to the question, raised by the interveners, with reference to the maintenance of the attachment upon the schooner by the libelant. It appears that, after the attachment of the schooner by the libelant, she was put in possession of the treasurer of the libelant corporation, without pay; that the keeper, thus put in possession, did not remain continuously aboard the schooner, but did put notices of the attachment in conspicuous places upon the schooner, which was totally dismantled, without sails or rudder, and having no crew. The interveners did not raise the question in the usual way, by making an actual attachment of the vessel which they claimed to have found without a keeper. They could have thus directly challenged the marshal's possession. Instead of doing this, they waited until the sale of the vessel under the attachment, which they deny to have been maintained, and they now come and claim to be on an equality with the libelant in looking to the funds obtained by the sale of the schooner upon the attachment, maintenance of which they deny. I am constrained to hold that the maintenance of the attachment of the vessel, and the possession by the court, have not been challenged in any proper way.

The proofs do not present a case in which a libeled vessel has been permitted by the marshal to remain in her usual trade, and allowed to navigate and use supplies and other necessaries, as in the case of The Young America (D. C.) 30 F. 789, 791, in which case Judge Addison Brown said:

"The evidence shows that in this case nothing more than a formal arrest of the vessel upon the original libel was desired, and that, by direction of the libelant's proctor, the vessel was allowed by the marshal to pursue her ordinary business as before, and that she did so, without interruption, for about five months after her first nominal arrest, on the 10th of January; that during this time there was no keeper on board, and no notice of attachment posted upon her masts, nor was there any publication of process until the latter part of May. In effect, the vessel was not in the custody of the court at all."

In the case at bar the interveners have lost nothing, except by reason of the loss of the sails by fire, for which their claim, if any, is against the Eastern Steamship Lines, on whose property the sails were lost, and the proofs show that the interveners had ordered the captain to leave the sails in the carrier's storehouse, where they remained until actually destroyed by fire.

The result must be that the right of the interveners to a lien, on an equality with that of the libelant, is denied. The petition of the interveners is dismissed, but without costs.