## THE KONGO.

### No. 10171.

Circuit Court of Appeals, Sixth Circuit.
May 27, 1946.

---

Leo J. Sandmann and William Mellor, both of Louisville, Ky. (Garner Petrie, William Mellor, Louis Seelbach, and Leo J. Sandmann, all of Louisville, Ky., on the brief; A. M. Curtis, of Baton Rouge, La., Burch, Minor & McKay, of Memphis, Tenn., and Bullitt & Middleton, of Louisville, Ky., of counsel), for appellants.

Thomas J. Wood, of Louisville, Ky. (D. C. Walls, of Louisville, Ky., Benjamin W. Yancey, of New Orleans, La., and Thomas J. Wood, of Louisville, Ky., on the brief; Terriberry, Young, Rault & Carroll, of New Orleans, La., and Doolan, Helm, Stites & Wood, of Louisville, Ky., of counsel), for appellees.

- Before HICKS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This case originated as a libel filed by a seaman of the Towboat Kongo and L. Birch McBride as assignee of other seamen, to recover unpaid seamen's wages. Other claimants intervened, claiming that they had delivered necessary supplies and made necessary repairs for the Kongo at the request of its captain. During the period in controversy the Kongo was owned by the Defense Plant Corporation, was under charter to the United States Barge Lines Corporation, hereinafter called the Barge Lines, and was operated by McBride as sailing master.

McBride, who was an experienced river captain, desired to freight oil on the Mississippi and Ohio Rivers during the progress of the World War. He induced

the Defense Plant Corporation to purchase the Kongo for that purpose, and upon the refusal of the Defense Plant Corporation to deal with him individually, McBride formed the Barge Lines Corporation. He and his brother subscribed for 51% of the stock, but no subscriptions were paid in and no stock was issued. The only boat operated by the Barge Lines was the Kongo. McBride became the president of the corporation and secured a lease of the Kongo from the Defense Plant Corporation. The lease was cancelled, before any freight operation was undertaken, and the boat was chartered to the Barge Lines under a charter party, which included the following provision: "Article VI. Neither Charterer nor any of its employees or agents shall have any right, power or authority to create, incur, suffer, or permit to be placed or imposed upon said vessel any maritime lien, or other lien, or incumbrance or charge, or to incur debt, obligation or charge upon the credit of said vessel. * * *"

It was agreed that the charter party should be effective on delivery of the Kongo and the boat was handed over to McBride on May 27, 1943, at New Orleans, Louisiana. The charter party had previously been executed by McBride for the Barge Lines, and it was executed by the Defense Plant Corporation in June. McBride started north on May 30, 1943, purchasing a marine boiler plate and large quantities of oil from the Standard Oil Company in Baton Rouge and Memphis. At Baton Rouge, Memphis and Louisville he purchased from other intervening libellants necessary material and supplies, and was furnished labor for substantial and necessary repairs. McBride represented on all of these occasions that he was authorized to secure supplies and to have repairs made on the credit of the boat. This representation was made in the face of the fact that he himself had been present at numerous conferences in which the provision of the charter party limiting his power in this regard was discussed and framed, and had been present when the entire charter party was read aloud in final conference. The boat did not carry a copy of the charter party, and none of the libellants was aware of the existence of the bare boat provision. None of the appellants here made any investigation as to the existence of a possible charter except one which telephoned the Barge Lines office and was told in effect by a stenographer that the captain had the authority to pledge the credit of the boat for fuel oil.

Towards the close of its trip up the rivers, the Kongo was repossessed by the Defense Plant Corporation for the nonpayment of charter hire. None of the seamen's wages had been paid, and McBride personally compensated a number of them and took assignments of their claims for wages.

▮ The District Court disallowed the claim of McBride's personal representative, based upon the assignments, upon the ground that McBride cannot be permitted to shield himself from the consequence of his own failure to pay the wages by interposing the corporate fiction of the Barge Lines, a dummy with no financial responsibility. It disallowed all of the claims for necessary repairs and supplies, upon the ground that reasonable diligence had not been shown by the claimants in ascertaining the terms of the charter party. Under the applicable statutes, sections 971, 972 and 973, 46 U.S.C., 46 U.S.C.A. §§ 971–973, persons furnishing repairs, supplies or other necessaries have a maritime lien on the vessel, and the master is presumed to have authority of the owner to procure such necessary repairs and supplies. But if the person furnishing such necessaries knows, or by the exercise of reasonable diligence could have ascertained that because of the terms of a charter party the person ordering the repairs, supplies or other necessaries was without authority to bind the vessel therefor, the lien is not created.

▮ The decision as to McBride's claim was clearly correct. A seaman's lien for unpaid wages is effective even as against the provisions of a charter party forbidding the master from creating any lien against the vessel [The S. W. Somers, D.C., 22 F.2d 448; The Chester, D.C., 25 F.2d 908], and the lien is assignable. The Englewood, D.C., 57 F.2d 319; The President Arthur, D.C., 25 F.2d 999; Thomas v.

Osborn, 19 How. 22, 60 U.S. 22, 28, 15 L. Ed. 534. However, this doctrine does not extend so far as to protect a co-owner of the boat or one who has an interest in the boat. He cannot, by paying the lien claims and taking an assignment, obtain a lien against the boat. The Cimbria, D.C., 214 F. 131; The Frank Brainerd, D.C., 3 F.2d 664.

Appellants vigorously urge that this rule of law affords no benefit to the appellee contending that neither the Barge Lines nor McBride was a co-owner of the boat. It points out that in the cases relied on in the District Court, The Samuel Little, D.C., 206 F. 686; The Gyda, D.C., 235 F. 266; The Owego, D.C., 292 F. 403, 407; The Frank Brainerd, supra, the assignee was either owner, co-owner, or had a substantial interest in the vessel. In The Gyda, the claimant was stockholder in the corporation which owned the vessel. In none of these cases was the assignee a mere employee of the charterer.

■ While the Kongo was owned by the Defense Plant Corporation, and not, except in contemplation of law, as discussed below, owned by the Barge Lines, this fact alone does not determine McBride's status. The record establishes by conclusive evidence that he was far more than a mere employee of the Barge Lines. In addition to being president and in control of the majority stock he was the managing agent of the corporation, who performed all functions of management and control with reference to the freighting operation. Moreover, appellants' contention completely ignores the effect under established law of the charter party entered into between the Defense Plant Corporation and the Barge Lines. The contract let the whole vessel with a transfer to the Barge Lines of its entire command and possession and consequent control over its navigation. This amounted to a demise or lease of the vessel. Cf. United States v. Hvoslef, 237 U.S. 1, 16, 35 S.Ct. 459, 59 L.Ed. 813, Ann. Cas.1916A, 286. In such case the charterer is a special owner (United States v. Shea, 152 U.S. 178, 189, 190, 14 S.Ct. 519, 38 L. Ed. 403), and is to be considered owner for the voyage and service stipulated. Reed v. United States, 11 Wall. 591, 600,

78 U.S. 591, 600, 20 L.Ed. 220; Leary v. United States, 14 Wall. 607, 610, 81 U.S. 607, 610, 20 L.Ed. 756. McBride was found by the District Court to be the alter ego of the Barge Lines, and this finding is supported by substantial evidence. He was in fact the corporation. No stock was issued and no subscriptions to the stock were paid, and all the functions of the corporation were performed by McBride. As the alter ego of the Barge Lines, he was a special owner of the Kongo, and certainly had an interest in the vessel. Both the Barge Lines and McBride were under a primary duty to pay the seamen's wages. McBride cannot, by paying the wages, and taking an assignment from the seamen, force others to reimburse him for the identical claims for which he was primarily liable.

■ Appellants urge that the alter ego doctrine is applied only in case of fraud, and contend that McBride was not aware of the existence of the bare boat provision, and hence cannot be held to have acted fraudulently or unfairly. But the record fully sustains the finding of the District Court that McBride was well acquainted with this provision, for he participated in the conference at which the charter party was framed; he heard it read, and he executed it on behalf of the Barge Lines. Under these circumstances he was not entirely innocent in his representation as to his authority. A fraud would result if McBride's representative could collect from third parties the debts which he obligated himself to pay. Such a result would violate the underlying principles of admiralty proceedings, for while admiralty courts do not have general equitable jurisdiction, they have capacity to apply equitable principles in order the better to attain justice. Schoenamsgruber v. Hamburg Line, 294 U. S. 454, 457, 55 S.Ct. 475, 79 L.Ed. 989. Or, as stated by Mr. Justice Story in Brown v. Lull, 4 Fed.Cas. pages 407, 409, No. 2,018: "they [admiralty courts] act upon the enlarged and liberal jurisprudence of courts of equity; and, in short, so far as their powers extend, they act as courts of equity."

■ As to the claims for materials and supplies, the District Court was likewise correct. The claimants were put upon

reasonable notice, requiring them to ascertain the terms of the charter party. As stated in United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361, a material-man cannot rest upon presumptions until he is put upon inquiry. The court states at page 489 of 260 U.S., at page 182 of 43 S. Ct., 67 L.Ed. 361: "To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms." Reasonable diligence required the claimants in this case to investigate the authority of the master. The Olympia, D.C., 58 F.2d 638, 641. The name "United States Barge Lines, Inc.," was printed in large letters on the boat, which also carried the words "Property of Defense Plant Corporation an Instrumentality of the United States Government." This was notice of the existence of the charter. The Defense Plant Corporation had offices in four cities along the route, and the terms of the charter could easily have been secured upon inquiry at one of these offices. While the charter party may not have been on file in these offices nor on the boat, the telephone was available. The record clearly shows that had inquiry been made at one of the local offices it would have been referred to Washington, and according to general practice, promptly answered. This fact might well have been inferred, but it also is definitely proved. Thus the claimants, as held by the District Court, had access to the terms of the charter party and cannot successfully contend that they exercised reasonable diligence within the meaning of section 973, 46 U.S.C., 46 U.S.C.A. § 973. The Western Wave, 5 Cir., 77 F.2d 695, 698.

The parties, in an agreed motion, move the court to substitute the Reconstruction Finance Corporation as party appellee herein, in place of the Defense Plant Corporation. By joint resolution of Congress, the Defense Plant Corporation has been dissolved, and all of its functions and powers, together with all of its assets and liabilities, have been transferred to and vested in the Reconstruction Finance Corporation. The motion is allowed.

The judgment of the District Court is affirmed.