## BARNES et al. v. THE "KONGO" et al.
### No. 10752.

United States Court of Appeals
Sixth Circuit.
April 14, 1949.

Leo J. Sandmann, of Louisville, Ky. (Leo J. Sandmann and Leon Seidman, both of Louisville, Ky., on the brief), for appellants.

Thomas J. Wood, of Louisville, Ky., (David C. Walls, of Louisville, Ky., Benjamin W. Yancey, of New Orleans, La., and Thomas J. Wood, of Louisville, Ky., on the brief and Terriberry, Young, Rault & Carroll, of New Orleans, La., and Doolan, Helm, Stites & Wood, of Louisville, Ky., of counsel), for appellees.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This controversy grows out of a libel filed by a seaman of the Towboat Kongo and an assignee of other seamen to recover unpaid wages. Other claimants intervened asserting that they had delivered necessary supplies and made necessary repairs for the Kongo at the request of its captain. Claims of a number of intervenors were heretofore heard and disallowed by the district court, and its decision was affirmed by this court. The Kongo, 6 Cir., 155 F.2d 492, certiorari denied Standard Oil Co. of Louisiana v. "Kongo", 329 U.S. 735, 67 S.Ct. 99, 91 L.Ed. 635.

---

[8] 42 Am.Jur. p. 702, Public Administrative Law § 254.

Appellants are subsequent intervenors who filed amended intervening libels January 14, 1947. Their claims were disallowed by the district court. Mrs. Barnes had, on March 13, 1943, loaned $1,500 for a thirty-day period, to be used for the payment of wages, materials, and expenses in connection with the conversion of the Kongo. Appellant Fisher had loaned money for the purpose of enabling the Kongo to make a voyage. In making the loan by appellant Barnes, the agreement with her was that it would be repaid from the monies and reimbursements due and to become due the United States Barge Line, lessee of the Kongo, for freight earned by the ship. After this obligation of $1,500 was past due, it was extended, on May 13, 1943, to the conclusion of the first contemplated voyage of the Kongo. The agreement evidencing this extension set forth that appellant Barnes did not waive or release any claim she had against the funds due the United States Barge Line from the Defense Plant Corporation, "or any claim that she has against the Steamer Kongo, her furnishings, tackle, equipment, engines and machinery, but in addition to such lien or claim, she shall have a claim on the earnings and the freight of said Steamer Kongo, her furnishings, equipment, tackle, engines and machinery to secure payment of the above sums." Later, appellant loaned $1,100 to enable the Kongo to complete its voyage on the agreement that she would be repaid "from the freight and cargo of the Steamer Kongo and barges, due and to become due from the Standard Oil Company of New Jersey."

Appellant Fisher's claim is based upon one loan to the Master of the Kongo for the purpose of enabling the ship to make a voyage, made on the agreement that Fisher was to be repaid from the proceeds of the freight earned and to become due from the Standard Oil Company at the conclusion of the voyage; and a subsequent loan for the purpose of enabling the ship to continue a voyage, which was agreed to be repaid from the proceeds of the freight earned and to become due from the Standard Oil Company. The funds to which appellants had looked for repayment of their loans, as evidenced by the written understandings, were subsequent to the making of the loans, paid into the United States District Court for the Southern District of New York, and there, in several admiralty and interpleader suits, lawfully distributed by orders of the court to other creditors. Appellants did not share in this distribution. Standard Oil Co. v. Defense Plant Corp. et al., D.C., 57 F.Supp. 13; Defense Plant Corp. v. United States Barge Lines, Inc., D.C., 57 F.Supp. 14, affirmed in 2 Cir., 145 F.2d 766.

With one exception, appellants did not make the loans in question, or enter into agreements for extension of their payment, on the obligation of the vessel; they relied solely on its earnings. Such reliance on the earnings as security for the loans amounts to a waiver of lien on the vessel.

Nor can liability be enforced on the claims of appellants on the theory that the written obligations evidencing the debts are Respondentia Bonds. The agreement for repayment of the loans lacks most of the essentials of those archaic instruments, the use of which has passed, with other appurtenances and trappings of romance of days now remote, when masted ships rode the waters of strange harbors, while their masters, far from their home ports, and unable to send a message to the owners, tried to raise cash on bonds of Respondentia to enable their ships to clear for the continuing voyage.[1]

---

[1] "Marine hypothecations had their origin in the necessities of commerce, and are said to be creatures of necessity and distress. When properly authorized and duly executed they are of a high and privileged character and are held in great sanctity by maritime courts." Delaware Mut. Safety Insurance Co. v. Gossler, 1877, 96 U.S. 645, 24 L.Ed. 863. The master has authority to pledge the ship and freight to raise the necessary funds for the voyage. The pledge of the ship is effected by a contract of bottomry, the bottom or keel of the ship being figuratively used to express the whole body of the ship. Where the cargo alone is hypothecated, the contract is called Respondentia. 2 Blackstone Comm. 458. See Conard v. Atlantic Ins. Co., 1828, 26 U.S. 386, 1 Pet. 386, 7 L.Ed. 189. Be-

Furthermore, in the light of the decision of this court in The Kongo, supra, advances made after the execution of the charter party, referred to in that case, in which the charterer and his agents were forbidden to impose any maritime lien or encumbrance, or incur any charge or debt on the vessel, could not be a lien thereon.[2] Appellants in this case were charged with notice of the terms of the charter party in like manner as were the other libellants whose claims were heretofore considered and disallowed by this court. The Kongo, supra. There is, as has been mentioned, one exception to the disposition of disallowance of appellants' claims. When appellant Barnes, on May 13, 1943, extended the time for payment of the obligation of $1,500, the writing evidencing the understanding provided not only that she did not waive any claim to the funds due from the United States Barge Lines from the Defense Plant Corporation, or of any claim she had against the Steamer Kongo, her furnishings, tackle, equipment, engines, and machinery, *"but in addition to such lien or claim, she shall have a claim on the earnings and freight of the said Steamer Kongo, her furnishings, equipment, tackle, engines and machinery to secure payment of the above sums."* (Emphasis supplied.) This extension for the payment of the loan was made while the vessel was under lease to the Barge line, and before the date of the termination agreement and execution of the charter party which contained the prohibition against the incurring of such a charge or lien. It seems clear that by the foregoing quoted provision, appellant Barnes extended the time for payment of the loan which had been made for the benefit, repair, and conversion of the steamer, on the explicit understanding and agreement that she would have a lien on the furnishings, equipment, and engines of the vessel. A master of a vessel is presumed to have authority of owner to procure necessary repairs and supplies, and persons furnishing repairs, supplies, or other necessaries, have a maritime lien on

fore the master resorts to bottomry, he must, when possible, communicate with the owner. The Oriental [1851], 7 Moore P.C.C. 398; The Panama [1870], L.R. 3 P.C. 199: or attempt to do so if, in the circumstances, it is rational to expect that he may have an answer within a convenient time, having regard to the circumstances of the case. La Ysabel [1812], 1 Dods. 273. To hypothecate the cargo, the master must communicate with the owner, if possible. The Nuova Loanse [1852], 17 Jur. 263; The Cassa Marittima of Genoa [1877], 2 App.Cas. 156; The Hamburg, Brown. & Lush. 253, 273 P.C. [1864]; The Julia Blake, 1882, 107 U.S. 418, 2 S.Ct. 692, 27 L.Ed. 595; The Mauna Loa, D.C.N.Y.1896, 76 F. 829. The communication must state the necessity for raising the loan and the necessity for doing so by bottomry or Respondentia. The Oriental, supra; The Cassa Marittima of Genoa, supra. And, in any event, the master's authority to hypothecate the cargo probably exists only in the case of voyages from one country to another and does not extend to coastwise voyages. The Gaetano and Maria, [1882], 7 P.D. 137. To constitute a right to hypothecate the ship, there must be urgent necessity, in a foreign port, and a total want of sufficient credit. The Mary, 1798, Fed.Cas.No.10,467, 1 Bee 100. Only in case of war, seismic disturbance, breakdown of wireless or radio, or atomic catastrophe whereby communication between a master and owner would become impracticable or impossible, does it seem that use of such contracts of hypothecation could be revived. All of the cases above referred to are concerned with dismasted or damaged sailing vessels. Respondentia bonds are obsolete. See Halsbury's Laws of England, Second Edition (Lord Hailsham), Vol. 30, Page 245 (1938).

[2] On August 26, 1942, the Defense Plant Corporation had leased the Steam Sternwheel Towboat Kongo to the United States Barge Lines; but on May 17, 1943, a termination agreement was signed by the Barge company and a charter was executed between the two parties providing that "Neither charterer nor any of its employees or agents shall have any right, power or authority to create, incur, suffer, or permit to be placed or imposed upon said vessel any maritime lien, or other lien, or incumbrance or charge, or to incur debt, obligation or charge upon the credit of said vessel. * * * Charterer shall exhibit or cause to be exhibited copy of this charter party to any person having business with said vessel which might give rise to any maritime lien or to any other lien, encumbrance or charge whatsoever."

the vessel therefor. The Kongo, supra. Accordingly, appellant Barnes is entitled to a maritime lien for this amount. The exceptions of the appellees filed in the district court are sustained save for the exception with respect to the claim in question of $1,500.

The case is remanded to the district court for further proceedings in accordance with this opinion.