### THE HURRICANE.

(District Court, E. D. Pennsylvania. November 7, 1924.)

Nos. 243, 245, 247, 251, 269, and 293 of 1923, and No. 117 of 1924.

**I. Maritime liens ⬥30—Furnishers of repairs and supplies to dredge, without knowledge of unrecorded contract of conditional sale, held entitled to liens.**

Where a contract of conditional sale of a dredge was not recorded as required by the statutes of the state where made, and where the parties resided, and the dredge was in possession of the purchaser in another jurisdiction, claiming to be the owner, and its name was painted in large letters on the side of the boat, furnishers of repairs and supplies on its order, without knowledge of the sale, *held* entitled to liens, though by the terms of the contract, the purchaser was prohibited from creating liens.

**2. Evidence ⬥317(2)—Statement of stranger to suit held incompetent as hearsay.**

Testimony as to a statement made by a stranger to the suit *held* incompetent as hearsay.

**3. Seamen ⬥2—Dredge deepening channels in navigable water is "vessel," and persons employed thereon are "seamen."**

A dredge employed in deepening channels in navigable water is a "vessel," and persons employed thereon are "seamen," within the meaning of Comp. St. § 8392, and entitled to liens for their wages.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaman; Vessel.]

**4. Seamen ⬥2—Foreman in charge of operation of a dredge is a "seaman," and not a "master."**

The foreman in charge of the work of a dredge, under direction of a superintendent, is not a "master," but a "seaman," and entitled to a lien for his wages.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Master.]

In Admiralty. Libels by seamen and others against the dredge Hurricane; the Moore & McCormack Company, Inc., claimant. On final hearing on pleadings and proofs. Decrees for libelants.

Francis Rawle, Joseph W. Henderson, and Howard M. Long, all of Philadelphia, Pa., for libelants.

Willard M. Harris, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. The dredge Hurricane was attached at the instance of employees claiming wages as seamen, and a number of libelants claiming liens for supplies and repairs furnished and made to her and to her machinery in various amounts upon the alleged orders of the Canal Construction Company, a corporation alleged to be the owner. The Moore & McCormack Company, Inc., claiming as owner of the Hurricane, admitted by answer the admiralty jurisdiction of the court over the Hurricane, denied ownership in the Canal Construction Company, denied necessity for the supplies and repairs, and set up the possession of the latter company under an agreement for conditional sale of the Hurricane by the claimant to the Canal Construction Company, dated January 4, 1922, and containing a clause under which the Canal Construction Company agreed not to incur any debts, or obligations upon the credit of the dredge, and to hold it free and clear of any lien or claims whatever until all of the purchase price should be paid. By stipulation of the proctors for the respective parties, the cases were consolidated, and the testimony taken by deposition, that taken in any or all of the cases to be used interchangeably in any or all of them, either on behalf of the libelants or of the respondent and claimant.

[1] It was satisfactorily proved that the supplies and repairs for which liens are claimed were furnished and made on the order of George W. Beeman, president of the Canal Construction Company, Inc., while the dredge was lying at the port of Philadelphia, and that the amounts claimed were the amounts agreed upon between Beeman and the various claimants and were just and reasonable charges. The respondent claims that no maritime lien arose, first, because the several libelants failed to exercise reasonable diligence to ascertain that, because of the terms of the agreement for the sale of the vessel, Beeman, who ordered the supplies and repairs, was without authority to bind the vessel therefor as provided by the Maritime Lien Act of June 23, 1910 (Comp. Stat. §§ 7783, 7784, and 7785), as construed in United States v. Carver (The Clio) 260 U. S. 482, 43 S. Ct.

181, 67 L. Ed. 361; and, second, that the material and repairs and supplies were not necessaries which are the subject of a maritime lien.

The sufficiency of the testimony to establish reasonable diligence on the part of the various lien claimants must be determined in accordance with the circumstances in each case. The dredge was in the possession of the Canal Construction Company. Its president, Mr. Beeman, represented it as the person to whom the management of the dredge at the port of supplies was intrusted. From January 4, 1922, the Canal Construction Company was in possession under the conditional sales agreement of that date. Prior to that time, it was in possession under a charter dated March 29, 1921, from Moore & McCormack Company to it, by the terms of which the charterer agreed not to incur any debts or obligations upon the credit of the vessel, nor to create any lien upon the vessel while in possession under the charter.

As to the conditional sales agreement, it is undisputed that both parties thereto are residents of the city of New York and the borough of Manhattan. The agreement recites that both companies were organized under the laws of the state of New York and have their principal offices respectively in the city of New York. This agreement was never filed of record in the office of the clerk of New York county as provided by the New York Conditional Sales Act, No. 138 of the Session of 1915, chapter 14 (Consol. Laws, c. 41, § 60 et seq.). The act provides that conditional sales agreements shall be recorded in the city or town where the vendee resides at the time of the execution of the agreement, and, if the vendee is a nonresident, then in the city or town where the property is located, except that in the city of New York, in the borough of Manhattan, inter alia, it shall be recorded in the office of the clerk of the county of New York. Unless recorded within a reasonable time, the making of such agreement is void as against creditors. It is not necessary in the instant case to decide whether the lien of the seller was void at the time the various liens against the vessel, asserted in these proceedings, are claimed to have accrued.

Assuming that Moore & McCormack Company was the owner, it is quite apparent that it did not itself exercise any reasonable diligence to make known to creditors or any one, including the lien claimants, the

fact of its ownership. Upon the sides of the dredge the name "Canal Construction Company" was painted in large letters, and was allowed to remain there in the public view until after these suits were ·brought, and bankruptcy proceedings had been instituted, · when the Moore & McCormack Company acquired possession.

All of the libelants were informed, upon making inquiry .of Beeman, concerning the ownership of the dredge, that he was the owner; he speaking, it is apparent, as president of and on behalf of the Canal Construction Company. The Canal Construction Company's assertion of ownership in response to these inquiries, taken in connection with having· its name upon the dredge, is sufficient, in my opinion, to establish reasonable diligence on the part of the several lien claimants in endeavoring to ascertain whether for any reason Beeman, the person in charge having the management of the dredge on behalf of the apparent owner, was without authority to bind the vessel. The existence of the conditional sales agreement was not known to those making the inquiry, and its existence would not have been revealed by a search of the records where it should have been filed in order to protect the alleged owner against creditors asserting a lien.

The facts in this case are distinguishable from Morse Dry Dock & Repair Co. v. United States (D. C.) 298 F. 153, where the result of the inquiry showed that the vessel had been bought from the United States, and that there was a charter sales agreement in effect between the United States and the purchaser, and the purchaser failed to make inquiries of the Shipping Board as to the terms of the contract; the disposition of government vessels through the Shipping Board being a matter of commercial and public interest. The facts there were amply sufficient to put the contractor upon further inquiry. And in the case of Gray's Harbor Stevedore Co. v. United States (D. C.) 298 F. 159, the vessel was under charter from the United States and no investigation as to its ownership was made. There was no evidence here sufficient to show general knowledge of ownership of the dredge, except such knowledge as would come from the name of the Construction Company upon its side.

[2] The respondent attempted to introduce evidence that Beeman had made statements to the effect that he had never informed any of· the lien claimants that he

or the Canal Construction Company owned the vessel. Testimony was offered ·to show that he had appeared upon request of the proctor for the claimant at his office, and had there made some statements which were taken down in narrative form by a stenographer. The stenographer's testimony was corroborated by Mr. Harris, proctor for the claimant, and by Charles L. Walker, who was present at the time when the statement is said to have been made. The statement was unsigned. This testimony, as it was developed, was entirely hearsay. Beeman was not a party to the suits. He was called as a witness on behalf of the libelants, but was not cross-examined for the purpose of contradicting him as to any prior statements he had made. The testimony was clearly . incompetent, and the objections to its admissibility are sustained, and the motion to strike out allowed.

It is contended by the respondent that the work undertaken as repairs to the dredge could not properly come under the designation of repairs, but was construction work. This point must be decided against the respondent under the authority of New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482.

It is established by the evidence that the supplies and repairs furnished and made by the several libelants were the subject of a maritime lien for "repairs, supplies, or other necessaries," and that they were furnished upon the credit of the vessel upon the order of the Canal Construction Company by its president, to whom the management of the vessel was intrusted; that the lien claimants in the exercise of reasonable diligence could not have ascertained the terms of the conditional sales contract inhibiting the creation of liens upon the vessel.

[3, 4] In the libel filed on behalf of J. W. Mairs and Edward S. Field, liens for wages are claimed on behalf of Mairs ·for services as dipper tender on the dredge, and on behalf of Field as chief operator in charge of its operation. I have no doubt that the Hurricane, being engaged in the work of deepening channels in navigable water, an occupation incident to navigation, is a vessel within the meaning of section 8392, Comp.. Stat., and that Mairs and Field, being employed in the operation of the dredge, are seamen entitled to liens for their wages. While Field was known as "captain," he was so designated merely because he was the foreman ·in charge of the

work under the direction of the superintendent of the Canal Construction Company. He was not a licensed master. Saylor v. Taylor, 77 F. 476, 23 C. C. A. 343; McRae v. Bowers Dredging Co. (C. C.) 86 F. 344; George Leary Construction Co. v. Matson (C. C. A.) 272 F. 461.

It is ordered that decrees be entered in favor of the several libelants for the amounts claimed in their several libels, and their proctors may prepare and present decrees accordingly.