**JOHN BAIZLEY IRON WORKS v. UNITED STATES (four cases).**

(District Court, E. D. Pennsylvania. February 7, 1925.)

Maritime liens ⬖➡30—Repairmen and materialmen must inquire into existence of agreement denying purchaser of vessel power to pledge vessel's credit.

Act June 23, 1910 (Comp. St. §§ 7783–7787), imposes active duty on furnisher of repairs or supplies to vessel to inquire into existence of any agreement of sale denying purchaser power to pledge vessel's credit and if there is absence of such power, and no inquiry is made, no right of lien exists, and if inquiry is made, and nothing is learned, question becomes one of sufficiency of inquiry, and, if proper inquiry was made, that is sufficient.

In Admiralty. Libels by the John Baizley Iron Works against the United States. Libels dismissed.

Willard M. Harris, of Philadelphia, Pa., for libelant.

Clinton M. Hester, Admiralty Atty., United States Shipping Board, of Washington, D. C., and George W. Coles, U. S. Atty., of Philadelphia, Pa.

DICKINSON, District Judge. All the above proceedings were for trial purposes consolidated and heard together. The conclusion reached turns upon a question of law. Prior to the act of Congress of June 23, 1910 (Comp. St. §§ 7783–7787) we had several accepted doctrines of the admiralty law upon the faith of which those concerned with vessels dealt. One was the familiar fiction, peculiar to the law maritime, that a vessel is an animate, sensate, and responsible personality, which could feel needs, and, having them, could supply them, and make itself responsible for what was supplied.

There was, of course, the cognate responsibility of the owners, possessed of the right to contract with respect to the vessel as any owner may contract with respect to any property which is his. The obligation to pay for supplies might thus become dual. The owner might be liable and the vessel likewise. The basis of liability, although formally different, was in one phase essentially the same. The owner was liable, because he had contracted the debt in person, or through some one with authority to bind him. The liability of the owner in consequence often turned wholly upon the question of agency.

The liability of the vessel turned in effect upon the same question of agency, or, what is essentially the same thing, the authority of whoever made the contract to bind the vessel. The contract, however, was viewed in the one case as made with the owners, and in the other as one made with the vessel. The same thought was expressed in the phrase that what was supplied was so supplied "upon the credit of the vessel." These considerations gave importance to the fact circumstances of whether the vessel, when the supplies were furnished, was in her home or a foreign port. The test of liability of owner and vessel before the act of Congress is thus indicated. The act of Congress deals with the question of liability by providing that the feature of "credit to the vessel" is preserved in all of its former importance, but a libelant is relieved of the burden of the proof of the fact primarily; the distinction between home and foreign ports is made of no importance, and when the libelant had dealt with others than the owner, a new test of liability is to be thereafter applied.

The pertinent provisions of the act of Congress are:

(1) A lien is given on a vessel for repairs, etc., made either in a home or foreign port upon the order of the owner, or of any one acting by his authority, and the extension of credit to the vessel need not be "alleged or proven."

(2) Certain designated persons, among those commonly associated with a vessel, are declared by the act to "be presumed to have authority" to bind her.

(3) No right of lien is "conferred when the furnisher knew or by the exercise of reasonable diligence could have ascertained, that because, inter alia, of the terms of the agreement of sale for the vessel, the person ordering the repairs, etc., "had no authority to bind the vessel."

The touchstone of this cause is to be found in this last-quoted provision of the act. The

construction first put upon it by many trial courts was that the act gave a prima facie right of lien, which was not lost unless the libelant was put upon inquiry by something which came to his knowledge or was brought to his attention. The viewpoint from which the act of Congress was to be read was corrected in the case of The Clio, The Morganza, U. S. v. Carver, 1923 A. M. C. 47, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361.

Since then the act has been read as imposing upon every libelant the positive active duty of making inquiry into (as applied to the facts of the instant case) the existence of any agreement of sale which denied to the purchasers the lawful right or power to pledge the vessel for repairs, etc. If there was such absence of rightful power, which upon inquiry might have been known, no right of lien exists, if no inquiry was made. If inquiry was made, from which (whatever its promise) nothing was learned, the question becomes one into the sufficiency of the inquiry. The duty of the libelant is, not to "ascertain," but to inquire. If proper inquiry is made, and nothing is learned, then the inquiry requirement of the act has been met. There are expressions in the act and in some of the opinions accompanying the rulings made which are sometimes read to mean that the finding must be made that the inquiry would have resulted in knowledge. This is a misreading of the language of the act and of the opinions. No court is expected to ascribe to itself the gift of prophesy, for no one could foretell what would be the result of an inquiry. What would have been the result of the inquiry is not the point. The point is that inquiry must be made, if there was the absence of the power to pledge to be learned. If there was nothing to deny the power, this provision of the act has no application. When there is, as here, an agreement of sale denying the power, inquiry must be made. If an inquiry had been made, but nothing learned, then the finding would become one of its adequacy. The person ordering the repairs here had (barring the provisions of the agreement of sale) ample authority to bind the owners and the vessel.

The libelant has in consequence a prima facie right of lien. This right, however, is qualified by the act of Congress by being subjected to the duty, before it becomes an absolute right, of inquiry into the existence of any agreement which denies the right. The libelant here rested upon this primary qualified right, and made no inquiry into the existence of an agreement, thereby assuming the risk of its existence. Such an agreement did exist, and it is destructive of the right of lien, which would otherwise exist. The cause is brought within the operation of two propositions. One is that, in the absence of a stipulation against liens, the libelant has a right of lien; the other is that, in the presence of such a stipulation and the absence of any inquiry into its existence, there is no right of lien. We look upon this cause as ruled by the Clio Case, U. S. v. Carver, supra. The respondent, in addition to resting upon the absence of inquiry, introduced evidence of actual knowledge of the existence of the stipulation against liens. Into this we have not gone.

In conformity with the Act of February 16, 1875 (Comp. St. § 1585), we make the following formal fact findings and state the conclusions of law reached therefrom:

### Findings of Fact.

These findings are made as facts so far as they are questions of fact, and so far as they are conclusions of law are likewise so found.

(1) The Republic Navigation Company, a corporation, was before and at the time the repairs were made and the supplies furnished the owner of the several vessels named, and the person ordering the supplies had authority to bind the owners and the vessel therefor so far as affected the ownership rights of the corporation.

(2) The sole title and claim of ownership of the corporation to the vessel was under the agreement of sale of December 9, 1920.

(3) This agreement contained a stipulation against liens, and under the provisions thereof those in possession of the vessel had no power or right to pledge her for repairs or supplies.

(4) No inquiry was made by the libelant into the existence of this agreement of sale.

(5) If such inquiry had been made, it might and probably would have brought home to the libelant knowledge of the existence and contents of the agreement.

(6) There are due the libelant by the corporation the sums set forth in its respective libels, with interest as set forth.

### Conclusions of Law.

1. The libelant has no right of lien against the vessel.

2. The respondent is entitled to a decree dismissing the libels against the United States, with costs to the respondent.

The conclusions reached are in accord with the adjudged cases, including The Princess Matoika, Morse D. D. & R. Co. v. U. S. (C. C. A.) 1924 A. M. C. 1033, 1 F.(2d) 233;

Frey & Son v. U. S. (C. C. A.) 1924 A. M. C. 1281, 1 F.(2d) 963; Standard Oil Co. v. U. S. (C. C. A.) 1924 A. M. C. 1276, 1 F. (2d) 961; The Moosabee, P. H. Gill & Sons Forge & Machine Works v. U. S. (C. C. A.) 1924 A. M. C. 1283, 1 F.(2d) 964; The Federal Maritime Lien Act, J. W. Griffin, 1924 A. M. C. 206, 37 Harvard Law Review, 15, 38.

The proctor for libelant has directed our attention to the case of The Dredge Hurricane, 1925 A. M. C. 42, 2 F.(2d) 70, now pending on appeal from this court to the Circuit Court of Appeals, —— F.(2d) ——.[1] We deem, however, the conclusions above stated to be in full accord with the conclusions stated in the opinion accompanying the ruling in the cited case. It is true that the libels there were sustained, and we have reached the conclusion that the libels here should be dismissed. This difference in result is due, however, wholly to the difference in the fact findings. In the cited case, the court found that inquiry had been made by the libelants as required by the act of 1910, but no knowledge of a denial of authority to pledge the vessel resulted. The court further found that the inquiry was adequate, and a full compliance with the duty imposed upon the claimant. The further feature in that case, which is not in this, was that under the laws of New York conditional sales agreements were required to be recorded, and the agreement in the case before the court had not been so recorded.

A decree in conformity with the findings made in this cause may be submitted.