**THE CITY OF HELENA.**
No. 12237.

District Court, E. D. Missouri, E. D.
Jan. 10, 1939.

· Thompson, Mitchell, Thompson & Young, Ivan H. Light, C. P. Berry, and Thomas L. Croft, all of St. Louis, Mo., for libelant.

Forest P. Tralles and Fred J. Hoffmeister, both of St. Louis, Mo., and Austin M. Coates, of Helena, Ark., for respondent.

DAVIS, District Judge.

This is a suit in admiralty, filed by Dan J. O'Connell, assignee of certain demands for the value of coal and other supplies delivered to the towboat "City of Helena". The following opinion is stated in the form of Findings of Fact, Conclusions of Law, and Comment, which is conceived to be in compliance with Admiralty Rule 46½, 28 U.S.C.A. following section 723.

### Findings of Fact

The Court finds:

(1) That the libelant is a resident of the City of Minneapolis, Minnesota.

(2) That the "City of Helena" was a steam propelled towboat of the port of Helena, Arkansas, but temporarily located on the Mississippi River at St. Louis, Missouri, at the time of the institution of this suit.

(3) That the "City of Helena" was owned by C. M. Johnston and Sons Sand and Gravel Company, an Arkansas corporation.

(4) That the suit was filed on June 19, 1937, and on June 22, 1937, the owners of vessel filed a bond and entered into a stipulation with libelant, whereupon the towboat was released to the owners.

(5) That prior to the transactions out of which this cause of action arises, on July 9, 1936, C. M. Johnston and Sons Sand and Gravel Company leased and chartered to S. J. Elliott, Lynn T. Elliott and Kenneth R. Elliott, co-partners, doing business under the firm name of Kaw Point Boat and Motor Company, the "City of Helena" for a period of time beginning on July 11, 1936, and ending October 15, 1936.

(6) That the charter or lease in this case does not expressly deny authority of the masters to bind the "City of Helena" for necessary supplies furnished.

· (7) That, among other provisions, the lease provides:

"It is further understood and agreed that the lessees shall pay all operating expenses incident to the operation of said boat and shall save the said lessor harmless from any loss or damage by reason of any expense incurred by the lessees in the operation of said boat."

"The lessees further agree to promptly make payment for all labor, materials and supplies used in the operation of said boat and to fully protect the lessor from any loss or damage by reason of any liens placed against said boat by reason of the furnishing of any labor or supplies therefor and further agree with and to the said lessor to protect and save it harmless from any loss or damage whatsoever by reason of any act of the lessees in the operation or use of said boat."

(8) That the lessees took possession of the towboat and put it in service conveying petroleum products from East St. Louis, Illinois, to Minneapolis, Minnesota.

(9) That the lessees employed Andy Sank as Captain of the towboat; that the said Andy Sank made one trip with the said boat from East St. Louis, Illinois, to Minneapolis and return; that the lessees then employed Francis Walters, who made one trip with the towboat from East St. Louis, Illinois, to Minneapolis, Minnesota, and return; and that, after the second trip, the owners of the said towboat took pos-

session of the same because the lessees failed to pay the rent and furnish the performance bond stipulated in the lease.

(10) That from July 17, 1936, to October 24, 1936, the Hartzell Coal Company of Minneapolis, Minnesota, a corporation incorporated under the laws of the state of Minnesota, sold and delivered coal to the "City of Helena" at East St. Louis, Illinois, and Minneapolis, Minnesota; and that the undisputed balance due for the said coal is $1,278.41.

(11) That from August 13, 1936, to September 19, 1936, the Yerly Coal Company of La Crosse, Wisconsin, sold and delivered coal to the said towboat; and that the reasonable value of the said coal was $578.31, which said sum is due and unpaid.

(12) That on August 12, 1936, D. Jehlen & Sons, of La Crosse, Wisconsin, sold and delivered sausage and other meats to the said towboat at the price of $52.46, which said sum is due and unpaid.

(13) That the suppliers, Hartzell Coal Company, Yerly Coal Company and D. Jehlen & Sons, had no knowledge of the terms of the charter or lease; that the said suppliers did not fail to exercise due diligence to ascertain the terms of the said charter or lease; and that the said suppliers did not rely exclusively upon the credit of the Kaw Point Boat and Motor Company— they relied upon both the credit of the "City of Helena" and the credit of the lessees.

(14) That said supplies furnished the towboat "City of Helena" were delivered and placed on board with the knowledge of the respective masters, Captain Andy Sank and Captain Francis Walters, who signed receipts for the same.

(15) That all of the coal and meat supplied to the "City of Helena" were necessary to the said towboat and its crew in its operation and in the prosecution of the voyages upon which she was engaged, and that the said supplies were sold and delivered to said towboat in order that she might be navigated and continue her business.

(16) That prior to the commencement of this action, each of the above mentioned accounts, together with the maritime liens against said towboat arising out of each of said claims, was for value assigned to libelant, who is now the holder and owner of the same.

(17) That this case is within the admiralty and maritime jurisdiction of this court.

### Conclusions of Law

The court finds:

(1) That libelant is entitled to a lien on the "City of Helena" for supplies furnished.

(2) That libelant is entitled to recover from respondent the sum of $1,909.18, together with interest and costs, in accordance with the stipulation in lieu of bail herein filed.

### Comment

Our decision must be governed by the provisions of sections 971, 972 and 973 of 46 U.S.C.A., as applied to the facts relating to the supplies of coal furnished by the Hartzell Coal Company. It was stipulated by the parties that the supplies furnished by the Yerly Coal Company and the Jehlen Sausage Factory and Market were furnished to the boat under the same circumstances and same conditions as applied to and were true of the Hartzell Coal Company.

The sections of the statute involved in this case read as follows:

Section 971: "Persons entitled to lien. Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Section 972: "Persons authorized to procure repairs, supplies, and necessaries. The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

Section 973: "Notice to person furnishing repairs, supplies, and necessaries. The officers and agents of a vessel specified in subsection Q, section 972, shall be taken to include such officers and agents when appointed by a charterer, by an owner pro

hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

In applying the facts of this case to the statute, we must keep in mind the purpose of the statute, as aptly expressed by the Supreme Court in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Company, 254 U.S. 1, 41 S.Ct. 1, 3, 65 L.Ed. 97: "The maritime lien developed as a necessary incident of the operation of vessels. The ship's function is to move from place to place. She is peculiarly subject to vicissitudes which would compel abandonment of vessel or voyage, unless repairs and supplies were promptly furnished. Since she is usually absent from the home port, remote from the residence of her owners and without any large amount of money, it is essential that she should be self-reliant—that she should be able to obtain upon her own account needed repairs and supplies. The recognition by the law of such inherent power did not involve any new legal conception, since the ship had been treated in other connections as an entity capable of entering into relations with others, of acting independently and of becoming responsible for her acts. * * *"

I. The first contention of the respondent is that the suppliers knew, or by the exercise of reasonable diligence could have ascertained, that by reason of the charter and lease, the masters of the "City of Helena" were without authority to bind the boat for the supplies furnished.

According to the statute, a maritime lien arose in favor of the Hartzell Coal Company for coal supplied the towboat, provided that the said Coal Company did not know, or by the exercise of reasonable diligence could not have ascertained, that because of the terms of a charter party, or for any other reason, the person ordering the supplies was without authority to bind the towboat therefor. The statute provides there is a presumption that either the master of a vessel or a charterer's agent has such authority, thereby placing the burden upon respondent of proving lack of authority in the person ordering the supplies, and that the furnisher either knew, or by the exercise of reasonable diligence could have ascertained such lack of authority.

Evidence offered at the trial was conflicting as to who ordered the coal for the vessel. Respondent's evidence tended to show that supplies were ordered by Gale Gordon, an agent of the charterer. Libelant's evidence tended to show that the masters of the vessel ordered the supplies. Regardless of which view we take of this evidence, either of the parties named had presumptive authority under the statute to bind the boat. Section 972 and 973, supra. However, we do take the view that the masters ordered the supplies, because in each instance they knew the supplies were being placed on board and signed receipts for them. Under these circumstances, the orders for the coal should be treated as having been given by the masters. W. G. Coyle & Co. v. North America Steamship Corporation, 5 Cir.1920, 262 F. 250.

[6, 7] It is our opinion that the respondent failed to introduce evidence capable of rebutting the statutory presumption that the masters had authority to bind the "City of Helena" for the supplies furnished. Respondent relied upon provisions of the charter party, which are stated in our Finding of Fact number 7, as showing the masters' lack of authority. But, from the wording of those provisions, there is nothing from which the Hartzell Coal Company, or its agents, could have ascertained that the masters had no power to bind the boat. In order to exclude the owner's liability for liens created by the master, the charter party must expressly deny the authority to create them. The South Coast, 1920, 251 U.S. 519, 523, 40 S.Ct. 233, 64 L.Ed. 386; The Golden Gate, 9 Cir.1931, 52 F.2d 397; The Portland, 9 Cir.1921, 273 F. 401; The J. W. Hennessy, 2 Cir.1932, 57 F.2d 77; The Everosa, 1 Cir.1937, 93 F.2d 732. Nothing in the charter expressly denies authority to create liens. The provisions of the charter disclose the fact that the masters had authority to bind the towboat: why should the charterer agree to save the owner harmless from liens if the masters had no authority to create them? That is the view taken by the court in The South Coast, supra.

At first blush it might appear that United States v. Carver, 1923, 268 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361, is in conflict with

our opinion, but upon an examination of the lease in that case, it is apparent that no conflict exists. In the Carver Case the lease expressly denied authority of the lessee to create liens.

In view of our holding that the charter party did not deprive the masters of authority to bind the towboat, it is not necessary to make inquiry as to whether or not the furnisher had knowledge of the terms of the lease, or whether, by the exercise of reasonable diligence, it could have ascertained them.

II. The second contention of the respondent is that the Hartzell Coal Company waived its lien by furnishing coal with the understanding that it was to be paid for by the charterers of the towboat.

■ Section 971 of the statute, quoted above, creates a presumption that the coal was furnished on the credit of the towboat, and, accordingly, the burden is on the respondent to prove a waiver of the lien. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Company, supra; The A. S. Sherman, D.C.1930, 51 F.2d 782; The J. W. Hennessy, supra; The Astorian, 9 Cir.1932, 57 F.2d 85. One furnishing supplies does not waive his lien by relying on the credit of the charterer as well as upon the credit of the vessel. To create a waiver, the evidence must show exclusive reliance upon the credit of the charterer. The Bronx, 2 Cir., 246 F. 809.

■ The evidence showing that the Hartzell Coal Company sent bills for coal to the charterers and set up the account in their name is not sufficient to establish exclusive reliance upon the credit of the Kaw Point Boat and Motor Company. Other evidence showed that the delivery tickets were made out to the "City of Helena"; and the President of the Hartzell Coal Company testified that he extended credit to the towboat. It is more in accordance with the evidence to say that the Hartzell Coal Company relied to a greater extent upon the credit of the boat than upon the credit of the charterers, who were strangers with whom the Coal Company had never before had dealings, and whose business was located outside the state of Minnesota. Consequently, we find that the Hartzell Coal Company did not waive its lien.

In accordance with the stipulation in lieu of bail filed in this case, judgment against the respondent may be submitted for approval, signature and entry.