**TAMPA SHIP REPAIR AND DRY DOCK COMPANY, Inc., Claimant, Appellant,**

v.

**ESSO EXPORT CORPORATION, Appellee.**

No. 16070.

United States Court of Appeals Fifth Circuit.

Oct. 24, 1956.

Chester H. Ferguson, Tampa, Fla., Thomas A. Hamilton, Hamilton, Denniston, Butler & Riddick, Mobile, Ala., for appellant.

George F. Wood, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

On May 28, 1954, the S. S. Cortes, owned by Tampa Ship Repair & Dry Dock Co., Inc., was chartered under demise form with a·restricted purchase option to South Pacific Steamship Lines, Inc. The charter contained, in the usual and unmistakable language, a provision [1] absolutely forbidding the creation of maritime liens.

Esso Export Corporation, with knowledge both of ownership of the vessel by Tampa and the fact of some character of charter (with purchase option) to South Pacific, thereafter supplied bunkers to S. S. Cortes at several ports in June and July 1954 without inspecting a copy of the charter party then aboard the vessel or attempting, by any means, to ascertain the terms of the charter from the owner whose presence in Tampa, Florida, was well known to it. Despite this the District Judge allowed a lien to Esso apparently on the theory that a previous exchange of letters somehow required the owner to warn the prospective supplier.

But when supplies have been furnished on the order of a charterer (or his ship Master) "* * * there is no question that the supplier is charged with knowledge of the provisions of the charter when he either knows them or by reasonable diligence could have ascertained them. * * * [and] When * * * the charter party, with knowledge of which the material-man is charged, prohibits the creation of a lien for supplies ordered by the charterer or * * * [his] representative, no lien will attach." Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 273, 275, 60 S.Ct. 937, 940, 84 L.Ed. 1197, 1940 A.M.C. 647.

Oblivious as Esso was both to knowledge and the means of knowledge, the lien fell under the pungency of the

---

1. "Neither the Charterer nor the Master shall have any right or power or authority to create, incur, or permit to be placed upon the vessel any liens whatsoever other than for crew's wages and salvage. The Charterer agrees to carry a properly certified copy of this agreement with the vessel's papers, and agrees to exhibit the same to any person having business with the vessel, and agrees to exhibit the same to any representatives of the Owner on demand. * * *"

Justice Holmes' few, but power-packed words in United States v. Carver, 260 U.S. 482, 489, 43 S.Ct. 181, 182, 67 L.Ed. 361, 1923 A.M.C. 47: "We regard these words [2] as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty in finding out both."

■ The duty on Esso was plain and positive for, "* * * the statute places the burden of exercising diligence upon the furnisher of repairs, and not upon the owner or his agent * * *", The Western Wave, 5 Cir., 77 F.2d 695, 697, 1935 A.M.C. 985. Findley v. Red Top Super Markets (The Queen Anne), 5 Cir., 188 F.2d 834, 1951 A.M.C. 1113. As in Morse Dry Dock & Repair Co. v. United States, 2 Cir., 1 F.2d 233, 237–238, 1924 A.M.C. 1033, "* * * the Carver Case is decisive * * *. The libelant * * * was bound to inquire, and had no right to rest upon presumptions. If he had inquired, if he had exercised reasonable diligence, he could certainly have ascertained the terms of the charter party, and that the Steamship Company, in ordering the repairs, was without authority to bind the vessels. * * *" The Kongo, 6 Cir., 155 F.2d 492, 1946 A.M.C. 1200.

Nor was the earlier exchange of letters (of May 7 and 13, 1954, respectively) between Esso and the Owner, treated by the District Court as decisive, of any real significance. Esso's letter was written as a result of South Pacific's approach for credit to enable Esso to make "our credit appraisal of the [South Pacific Steamship Lines, Inc.]" and sought confirmation that South Pacific would "operate the 'Cortez' under a bareboat charter including an agreement of sale." This confirmation was given in the Owner's reply of May 13 that "the final contract has not been signed, but from all indications, it will be concluded by the 18th or 19th of May."

■ As Esso's inquiry reflected on its face, this was an investigation of South Pacific's credit. It was neither an express nor implied assertion assented to by the Owner's reply that South Pacific, under the proposed charter had, or would have, the right to pledge the credit of the Owner's vessel for Charterer's debts or obligations. There was no deception. There was a straightforward answer to the inquiry posed, and Esso, with such positive knowledge that a charter party existed, had to anticipate, especially with its experience in the world-wide furnishing of bunkers, that the charter might well contain traditional prohibitions on the charterer's right to incur liens. The risk of non-inquiry was Esso's. Nothing in John Baizley Iron Works v. United States, D.C.Pa., 6 F.2d 25, 26, 1925 A.M.C. 565, whose dicta was apparently magnified to obscure its actual holding, or The Hurricane, D.C.Pa., 2 F.2d 70, 1925 A.M.C. 42, affirmed 3 Cir., 9 F.2d 396, could make more out of these letters than this. This was the only excuse for Esso closing its eyes to the facts so readily available. It is inadequate as a matter of law so reversal involves in no sense a rejection by us of fact findings by the District Court, McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, 1954 A.M.C. 1999; C. J. Dick Towing Company v. The Leo, 5 Cir., 202 F.2d 850, 854, 1953 A.M.C. 498; Societa An-

2. This referred to 46 U.S.C.A. § 973: "* * * but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a char-ter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

onima Navigazione Alta Italia v. Oil Transport Company, 5 Cir., 232 F.2d 422, 1956 A.M.C. 1073; Mississippi Valley Barge Line Company v. Indian Towing Company, 5 Cir., 232 F.2d 750, 1956 A.M.C. 757. The decree denying the Owner's cross libel for damages for wrongful seizure of the vessel is, however, affirmed, Frontera Fruit Co., Inc., v. Dowling, 5 Cir., 91 F.2d 293, 1937 A.M.C. 1259.

Reversed and affirmed in part.