**COOPER STEVEDORING OF LOUISI-ANA, INC., Appellant,**

v.

**A. G. PAPPADAKIS, Owner of the S.S. MARIA G. CULUCUNDIS, Appellee.**

No. 21980.

United States Court of Appeals
Fifth Circuit.

July 18, 1966.

Rehearing Denied Aug. 11, 1966.

James L. Schupp, Jr., Benjamin W. Yancey, Rufus C. Harris, Jr., New Orleans, La., for appellant, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., of counsel.

Leon Sarpy, New Orleans, La., for appellee, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., of counsel.

Before WISDOM and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

WISDOM, Circuit Judge:

Cooper Stevedoring of Louisiana, Inc. was employed to load cargo and to perform other services for the SS MARIA G. CULUCUNDIS when the vessel was at New Orleans in April 1961. April 11, 1962 the stevedoring firm filed a libel *in rem* against the vessel and *in personam* against the charterer and the owner of the ship and their agents to recover $7,140.69 in unpaid charges. Upon stipulation of the parties, the federal district judge dismissed without prejudice the proceedings *in personam*. The vessel's owner, A. G. Pappadakis, moved for summary judgment in the *in rem* proceeding. The district judge granted the motion and dismissed the libel on the ground that clause 17 of the charter-party, which was available for inspection by the stevedores, denied the presumed authority of the charterer as his agent to confer a federal maritime lien against the ship. Cooper Stevedoring of Louisiana, Inc. v. Alter Company, E.D.La. 1964, 230 F.Supp. 991; 46 U.S.C.A. §§ 971–973.

We reverse and remand, because the terms of the charter-party do not *explicitly* deny the authority of the charterer as his agent to create a lien against the ship.

\* \* \*

The Federal Maritime Lien Act provides that suppliers of stevedoring services shall have a maritime lien against a vessel when the services are furnished upon the order of the owner of the vessel or a person authorized by the owner. 46 U.S.C.A. § 971; see In re North Atlantic & Gulf Steamship Co., S.D.N.Y. 1962, 204 F.Supp. 899, 907, *aff'd*, Schilling v. A/S D/S DANNEBROG, 2 Cir. 1963, 320 F. 2d 628. Officers and agents of the charterer of the vessel are presumed to have authority from the owner to procure stevedoring services for the vessel. 46 U.S.C.A. §§ 972–973. However, the lien against the vessel shall not arise:

> when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party \* \* \* the person ordering the [stevedoring services] was without authority to bind the vessel therefor. 46 U.S.C.A. § 973.

The only question on appeal is whether clause 17 of the charter-party prevents attachment of a maritime lien. Clause 17 provides:

> Cargo is to be loaded, stowed and discharged by the Charterers, free of risk and expense to the vessel.

We have not found, nor have the parties suggested, a decision squarely covering the facts of this case. In analogous

cases courts have developed the rule that, in order to prevent attachment of a maritime lien, the charter-party must *explicitly* deny the authority of the charterer to create such a lien. Dampskibsselskabet Dannelbrog v. Signal Oil & Gas Co. of California, 1940, 310 U.S. 268, 280–281, 60 S.Ct. 937, 943, 84 L.Ed. 1198, 1204; Hercules Co., Inc. v. The Brigadier General Absolom Baird, 3 Cir. 1954, 214 F. 2d 66, 71; The City of Helena, E.D.Mo. 1939, 25 F.Supp. 864, 867 and cases cited therein. In the *Signal Oil* case, the charters required the charterers to "pay and provide for" (among other things) fuel oil. The Supreme Court of the United States, construing and in part overruling several of its earlier decisions,[1] held that the "provide and pay" clause was not in itself sufficient to prevent the arising of a maritime lien. Indeed, the Court indicated that there must in addition be a specific "prohibition of lien" clause like the one present in United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361. See Gilmore & Black, The Law of Admiralty § 9–44 at page 565 (1957). In *Carver* the charter explicitly provided that the charterer "will not suffer nor permit to be continued any lien, encumbrance, or charge which has or might have priority over the title and interest of the owner in said vessel." Id. at 487–488, 43 S.Ct. at 181. As Judge Brown has said, this is the "usual and unmistakable language [of a] provision absolutely forbidding the creation of maritime liens." Tampa Ship Repair and Dry Dock Co. v. Esso Export Corporation, 5 Cir. 1956, 237 F.2d 506, 507.[2] See also Walsh Stevedoring Co. v. M/S SLAGEN, 5 Cir. 1966, 361 F.2d 478.

■ Clause 17 is not a specific "prohibition of lien" clause. And, even if we were inclined to do so, we could not reasonably construe the language of the clause to deny the presumed authority of the charterer to procure stevedoring services and thereby to confer a maritime lien against the vessel. Charter-party terms which assign to the charterer the "risk and expense" of loading, stowing and discharging cargo have definite meaning in the law of admiralty. Such words may limit the shipowner's responsibility for cargo handling, which under British common law was a joint operation of the charterer and of the shipowner. See Harris v. Best, (1892) 68 L.T.R. (n.s.) 76; II Carver, British Shipping Laws § 685 (1963). But they do not affect the authority of the charterer to confer a federal maritime lien against the vessel.

The Supreme Court's reasoning in the *Signal Oil* case, where it rejected a "provide and pay" clause as a "prohibition of lien" provision, applies equally well to our rejection of a "risk and expense" clause:

We are of the opinion that it would thwart the purpose of the statute to compel the material-man furnishing supplies to the vessel to resolve the ambiguities which may be found in such charters as those here involved. The statute was intended to afford the material-man a reasonably certain criterion. The owner has a simple and ready means of protection. All that it is necessary for him to do, as the material-man in dealing with the charterer is charged with notice of the charter, is to provide therein that the creation of maritime liens is prohibited. When the owner does not do

1. The Kate, 1896, 164 U.S. 458, 17 S.Ct. 135, 41 L.Ed. 512; The Valencia, 1897, 165 U.S. 264, 17 S.Ct. 323, 41 L.Ed. 710; The South Coast, 1920, 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386; United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361.

2. The charter-party in *Tampa* provided:
   Neither the Charterer nor the Master shall have any right or power or authori-

ty to create, incur, or permit to be placed upon the vessel any liens whatsoever other than for crew's wages and salvage. The Charterer agrees to carry a properly certified copy of this agreement with the vessel's papers, and agrees to exhibit the same to any person having business with the vessel, and agrees to exhibit the same to any representatives of the Owner on demand. * * * Id. at n. 1.

so, he should not be heard to complain when it appears that it is the charterer's business to obtain supplies to keep the vessel on her way and the charter has not prohibited reliance upon the credit of the vessel. Id., 310 U.S. at 280–281, 60 S.Ct. at 943.

The libellant apparently did not investigate the terms of the charter-party although it was conveniently on display in the vessel's wheelhouse. 230 F.Supp. at 992. Failure to inquire, nevertheless, does not prevent the arising of the lien since the libellant is only charged with all that reasonably diligent inquiry would have disclosed; the terms of the charter-party did not disclose that the charterer as his agent had no authority to confer a federal maritime lien. Hercules Co. v. The Brigadier General Absolom Baird, supra, 214 F.2d at 71–72.

The judgment of the district court is reversed and the cause is remanded.