**TRANSOCEANIC TERMINAL CORPORATION, a corporation, Plaintiff,**

v.

**MIDLAND OVERSEAS SHIPPING CORPORATION, a corporation, American Marine Lines, a corporation, and the Motorvessels Zenobia Martini, Athenion, Triada, Captain Lemos, Teresa, Barbara, Three Sisters, Ionia and Captain Leonidas and their respective engines, tackle, apparel, furniture and freights, Defendants.**

**No. 67 C 7.**

United States District Court
N. D. Illinois, E. D.
April 25, 1967.

Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., Arter Hadden, Wykoff & Van Duzer, Cleveland, Ohio, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for plaintiff.

Abraham A. Diamond, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff, Transoceanic Terminal Corporation, is a stevedoring company which performed services for the Midland Overseas Shipping Corporation, a time-charterer of the motor vessel Barbara, for which it claims $81,344.46. Midland is unfortunately bankrupt. Complaint was filed against Midland, M/V Barbara, and eight other vessels, for the total sum of $110,419.94, on January 5, 1967, in Ohio, and transferred here. The charges asserted against M/V Barbara are for three loading periods: (1) 5/19/66–5/21/66, for $3,992.93; (2) 7/20/66–7/23/66,

for $32,812.93, and (3) 9/27/66–9/29/66, for $44,538.60. The complaint also sets forth the specific charges and dates as to the other vessels. Only the Barbara has been served to date.

M/V Barbara on March 15, 1967, filed a motion for summary judgment, supported by affidavits and a brief, which assert that her owner is Tore Ulff, a Swedish corporation, and she sails under the Swedish flag. The master of the vessel, Kjell Kristoffersson's affidavit, is filed in support of the motion for summary judgment. It establishes that the vessel was under a time charter dated December 9, 1965, to Midland, from whom the captain received his written instructions. The time-charter was kept on the bridge and was always available for inspection by persons concerned with it and who requested to do so. All arrangements for the loading and unloading of the cargo were handled by the time-charterer, Midland, or agents it designated.

Among other provisions, the time charter, Clause 18, lines 112 and 113, prohibits the charterer from permitting a lien to accrue against the vessel. It states,

"Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."

Further, defendant relies on the Maritime Lien Act, 46 U.S.C. § 973, which in applicable part provides,

" * * * nothing in this chapter shall be construed to confer a lien when the furnisher knew, or *by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor.*" (emphasis supplied)

Defendant urges that, since plaintiff admits it did not seek to learn whether the Barbara was under charter or the charter limitations on the incurring of liens against the vessel, plaintiff, as a matter of law, did not exercise reasonable diligence.

Plaintiff, in opposition to the motion for summary judgment, maintains that whether or not it exercised reasonable diligence is a question of fact, and the affidavit of Carl van Waning, general manager of plaintiff, asserts that it was not common knowledge and not a matter of general information that vessels, and in particular, the Barbara, operating under instructions from Midland, were time-chartered vessels and not owned by Midland. He avers that he personally believed the Barbara was owned by Midland, and in his contacts with Midland they referred to the Barbara as their vessel. Further, he states it is not the general practice of, nor would it be considered appropriate by the shipping industry, for stevedoring concerns to ask to see charter papers which might or might not be aboard vessels using their services; that in his experience of twenty years of stevedoring, affiant has never so inquired and knows of no instance where any other stevedoring concern has made such inquiry and that it is not common practice to do so.

Plaintiff argues that its services are maritime in nature and, other requirements of law being met, give rise to a lien against the vessel under the Federal Maritime Lien Act of 1910, as amended in 1920 (§§ 971–973). § 973 creates a presumption that any person to whom the management of the vessel at the port of supply is entrusted has authority from the owner to procure the repairs, supplies or other necessaries. Plaintiff maintains that, even conceding that the provisions of the charter could bar it, it is still a question of fact whether it exercised reasonable diligence to ascertain whether such a provision existed.

The Court concludes that the M/V Barbara's motion for summary judgment should be granted. There is no genuine issue of fact. The affidavits show that the time charter of the vessel from its owner, Tore Ulff to Midland, was on board, and available upon proper

inquiry to anyone desiring to examine it. The answers to the interrogatories, as well as the affidavit of plaintiff's general manager previously referred to, reveal that no such inquiry was made by plaintiff or anyone on its behalf. Had it been examined, it would have revealed that Midland had no authority to subject the vessel to a lien. The decisions of the Supreme Court of the United States, hereinafter cited and quoted, as well as a number of Court of Appeals' decisions, have uniformly held that a furnisher of services obtains no lien if he could have ascertained by the exercise of reasonable diligence either that the person ordering the services was without authority to bind the vessel or that the vessel was under charter, and, further, that the failure to investigate as to the existence of such authority or charter constitutes lack of reasonable diligence.

In Walsh Stevedoring Co., Inc. v. M/S Slagen, 361 F.2d 478 (CA 5, 1966), for example, the Court said, at p. 479:

"The only issue remaining is whether the libellant exercised that 'reasonable diligence' provided for by Para. 973, supra. The trial court found as a matter of fact that appellant made no inquiry or investigation to determine whether the vessel was under charter or to determine whether Westley had authority to bind the the vessel. The trial court was correct. Clearly, Westley was without authority to bind the vessel and this would have been learned by the appellant if it had made the reasonable diligent inquiry required under the Lien Act. Accordingly, the judgment of the District Court should be affirmed."

In Gilmore and Black, The Law of Admiralty, pp. 566–567, it is said:

"Without discussion, the Signal Oil case approved Justice Holmes unwarranted suggestion in Carver that the materialman is always charged with notice of the contents of a charter (unless, hypothetically, he can show that even by inquiry he could not have found out about it) even though there is nothing to call his attention to the fact of the charter's existence and he may reasonably suppose that he is dealing with the owner.

"By the Carver and Signal Oil cases *the materialman is always charged with notice of a charter's existence. This proposition seems to be the most clearly true where the services are furnished on the order of one who is in fact a charterer (even though the materialman may assume him to be the owner).* emphasis supplied

"The materialman has a theoretical escape by showing that he did in fact use 'reasonable diligence to ascertain' the true facts but found nothing. The cases have not worked out any satisfactory explanation of just how thorough an inquiry 'reasonable diligence' demands. Merely to ask the person who appears to be in possession or control is not enough. It is not clear whether an examination of the ship's papers is enough * * *. The materialman can take some comfort in the thought that he will not lose his lien because of failure to make inquiry if inquiry would have revealed nothing. * * * "

The 1922 case of United States v. Carver, 260 U.S. 482, 488–490, 43 S.Ct. 181, 67 L.Ed. 361, established the relevant standard of conduct. There, as here, no inquiry was made to ascertain what the facts might be. The Court in construing similar language in the 1910 statute stated:

"We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, *they call him to inquire.* To ascertain is to find out by investigation. *If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms.* * * * Here the primary undertaking was that 'the

charterers will not suffer nor permit to be continued any lien * * *.' We read this as meaning will not suffer any lien nor permit the same to be continued. * * * We are of opinion that the libelants got no lien upon the Clio * * *." emphasis supplied

As Gilmore and Black indicate, the Carver rule was approved in the *Signal Oil Co.* case (Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.), 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1939). To the same effect, see Cooper Stevedoring of Louisiana v. Pappadakis, 363 F.2d 352 (CA 5, 1966); United States v. S.S. Lucie Schulte, 343 F.2d 897 (2 Cir. 1965); In re North Atlantic and Gulf S.S. Company, D.C., 204 F.Supp. 899, aff'd. Schilling v. A/S D/S Dannebrog, 320 F.2d 628 (2 Cir. 1963).

Plaintiff seeks to avoid the application of Carver and the subsequent cases by pointing to the fact that, while the charter language prohibiting liens in Carver and that here involved is almost identical, the latter has the additional phrase "incurred by them or their agents" in describing liens which the charterer is prohibited from permitting to attach. The added phrase simply makes explicit what is implicit in its absence since the prohibition in both instances relates only to the charterer and does not preclude the ship owner or his agents from permitting liens to attach for services or materials ordered by them. It should be noted that there is no dispute here that the charterer Midland ordered the stevedoring services for which plaintiff seeks to assert a lien, just as it was the charterer which ordered the materials in Carver. Factually, the instant case and Carver are substantially similar if not almost identical.

In light of 45 years of uniform interpretation of the Federal Maritime Lien Act, the Court sees no basis for any other conclusion than that plaintiff's acknowledged failure to make any inquiry as to the status of the Barbara precludes its assertion of any lien against the vessel, since such an inquiry would have revealed that she was chartered to Midland and that the charter prohibited any lien against her. It is frequently more beneficial in commercial law to have a well defined standard of duty upon which all who deal may rely than to operate on an *ad hoc,* case-by-case basis. This is such a situation. The law might have developed conversely and placed the duty on the ship owner to advise furnishers of services and materials of any limitations on their right to assert liens against the ship. Congress and the courts have decreed the opposite rule and placed a duty to inquire on the supplier. If, as here, such inquiry would have revealed the facts, the failure to inquire constitutes a failure to exercise the reasonable diligence which the Federal Maritime Lien Act requires and no lien can attach. If the long standing rule is to be altered or reversed, the Congress, not the courts, should do it.

Defendant, M/V Barbara's motion for summary judgment, is granted. An appropriate order will enter.