**Adolph AJUBITA and A. W. Short**

v.

**S/S PEIK, her engines, tackle, gear and appurtenances.**

**No. 7135.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

June 23, 1969.

Joseph W. Nelkin, New Orleans, La., for plaintiffs.

L. J. Lautenschlaeger, Jr., Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for intervenor.

Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for E. A. Aaby's Rederi A/S.

HEEBE, District Judge:

This is an admiralty action brought *in rem* against the Norwegian motor ship PEIK in which the plaintiffs, Adolph Ajubita and A. W. Short and the intervening plaintiff, Jerry Fitzpatrick, seek to recover from the ship the value of their respective pilotage services.

The case was submitted on a stipulation of facts between all parties without oral argument. The Court, having duly considered the stipulation of facts, having studied the evidence and having studied the legal memoranda submitted by all parties and being fully advised in the premises hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I.

Adoph Ajubita and A. W. Short, plaintiffs, were "River Port Pilots", duly commissioned by the State of Louisiana and authorized to pilot vessels between Pilottown and New Orleans and in the Port of New Orleans and were members in good standing of the Crescent River Port Pilots Association, an organization of river pilots which maintained administrative and financial offices staffed by full-time employees in the City of New Orleans.

### II.

Jerry Fitzpatrick, intervening plaintiff, was an "Associated Branch Pilot of the Port of New Orleans" (Bar Pilot), duly commissioned by the State of Louisiana and authorized to pilot vessels into and out of the entrances of the Mississippi River and was a member in good standing of the Associated Branch Pilots, an organization of bar pilots which maintained administrative and financial offices staffed by full-time employees in the City of New Orleans.

### III.

E. B. Aaby's Rederi A/S was, at all material times, owner of the Norwegian flag M/S PEIK of 5,235 tons gross register, and has claimed the ship in this *in rem* proceeding, in which it defends the ship's interests.

### IV.

At all times material hereto, M/S PEIK was time chartered by its owners to Marlin International Corporation, the charter party being on the "New York Produce Exchange" form, dated August 20, 1964. See Exhibit B–1 through B–3. The foregoing charter arrangement, however, was not known to the plaintiffs, to the intervening plaintiff or to their respective Pilots Associations.

### V.

At all times material hereto, Lacey & Company, Inc., International Building, New Orleans, was the local agent of the time charterer of M/S PEIK, Marlin International Corporation. The foregoing agency arrangement was not known, however, to the plaintiffs, the intervening plaintiff or to their respective Pilots Associations.

### VI.

The fact that the vessel was chartered was made known to the master of the ship by telephone on August 20 or 21, 1964; a few days later he received written details of the terms of the charter party, including a copy of the form; thereafter, the master was furnished, not later than August 28, 1964, with a copy of the aforementioned charter party.

### VII.

Pursuant to the aforementioned charter party, the vessel was put at the disposal of the time charterers on the afternoon of Friday, August 21, 1964, at the Robin Street Wharf in the Port of New Orleans. After loading cargo at that dock, on the charterers' instructions, Lacey & Company, Inc. arranged to have the vessel moved to the Dumaine Street Wharf, Port of New Orleans, for the purpose of loading additional cargo. In this connection, a pilot was ordered from the Crescent River Port Pilots Association by Lacey & Co., Inc. The pilotage services were performed by A. W. Short, plaintiff. These services were properly performed and the fair, reasonable and statutorily established fee for said services was $50.00.

### VIII.

Following the rendition of these services, a receipt therefor was presented to the master of M/S PEIK, an employee of the vessel's owners, E. B. Aaby's Renderi A/S, who signed same. See Exhibit C, Item 1.

### IX.

On August 29, 1964, the charterers having completed the loading of the vessel, they made arrangements for the

ship to depart on its foreign voyage and on instructions from the charterers, Lacey & Company, Inc. ordered from the Crescent River Port Pilots Association the services of a pilot to take the vessel to Pilottown. Pursuant to these arrangements, the vessel, on the evening of August 29 and the morning of August 30, 1964, was piloted from New Orleans to Pilottown by Adolph Ajubita, plaintiff. These pilotage services were properly performed and the fair, reasonable and statutorily established fee for said services was $177.75.

## X.

Following the rendition of these services, a receipt therefor was presented to the master of M/S PEIK, who signed same. See Exhibit C, Item 2.

## XI.

Upon the arrival of the vessel at Pilottown on August 30, 1964, intervening plaintiff, Jerry Fitzpatrick, relieved Adolph Ajubita while the vessel was underway in midstream and proceeded to pilot the vessel through one of the Passes to sea. His services were not arranged for in advance by the charterers or by anyone else, but as was customary, through his pilots association, he was aware of the approximate arrival time of PEIK at Pilottown as a result of established liaison with the River Pilots Association. These services were properly performed and the fair, reaonable and statutorily established fee for said services was $177.19.

## XII.

Following the rendition of these services, a receipt therefor was presented to the master of M/S PEIK, who signed same. See Exhibit C, Item 3.

## XIII.

Neither of the Plaintiffs nor the intervening plaintiff, nor anyone acting on their behalf, at any time made inquiry of any nature to determine whether the ship was under charter or whether Lacey & Company and/or the master were without authority to bind the vessel for pilotage services.

## XIV.

Neither Lacey & Company, Inc. nor the master of M/S PEIK at any time made known to the plaintiffs or to the intervening plaintiff or to their respective Pilots Associations that Lacey & Company, Inc. was acting solely on behalf of the charterers or that there was in effect the charter party referred to in paragraph IV above.

## XV.

Thereafter, the Crescent River Port Pilots Association, acting on behalf of the plaintiffs, and the Associated Branch Pilots, acting on behalf of the intervening plaintiff, forwarded invoices covering the services above described to Lacey & Company, Inc.

## XVI.

When it appeared that payment of the foregoing invoices was not forthcoming, both the Associated Branch Pilots and the Crescent River Port Pilots Association placed Lacey & Company, Inc., on a "cash basis", i. e., the further services of their member pilots were refused unless advance payment was made therefor. The ship's charterers, Marlin International Corporation, became the subject of bankruptcy proceedings in the United States District Court for the Southern District of New York. Claims for the payment of certain pilotage, including the services which are the subject of this action, were filed in said proceeding on behalf of plaintiffs and the intervening plaintiff; nothing has been realized as a result of these claims. Prior to the rendition of the pilotage services above described, M/S PEIK was piloted from sea to Pilottown and from Pilottown to New Orleans by one or more members of plaintiffs' and intervening plaintiff's respective Pilots Associations; and they were paid in full for these services.

## XVII.

The aforementioned accounts for pilotage services rendered by the plaintiffs and the intervening plaintiff have not been paid.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction over this action under the general admiralty and maritime law of the United States and venue is properly laid in this District Court.

### II.

 Pilotage is a "necessary" within the meaning of the Federal Maritime Lien Act, 46 U.S.C. §§ 971–975. J. Ray McDermott & Co. v. Off-shore Menhaden Company, 262 F.2d 523 (5th Cir. 1959); The Western Wave, 77 F.2d 695 (5th Cir. 1935); Diaz v. The S. S. Seathunder, 191 F.Supp. 807, 826 (D.Md.1961). Title 46 U.S.C. § 975 is applicable to pilotage and thereby supersedes Louisiana Revised Statutes 34:964.

### III.

The charter party in question contained a prohibition of lien clause and the charterer and their local agents had *no authority* to bind the ship for necessaries. (See clause 18, Exhibit B–1.) By the provisions of the Federal Maritime Lien Act, particularly 46 U.S.C. § 973, those supplying necessaries are obligated to investigate the authority of the person ordering the necessaries and can have no lien if they fail to investigate. United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923); Tampa Ship Repair & Dry Dock Co. v. Esso Export Corp., 237 F.2d 506 (5th Cir. 1957) and In re North Atlantic & Gulf S. S. Co., 204 F.Supp. 899 (S.D.N.Y. 1962).

### IV.

Since none of the pilots in this case nor their Pilots Associations made any inquiry as to the authority of the party engaging them (see Finding of Fact XIII, *supra*) and since the prohibition of lien clause could have been discovered by a reasonably diligent inquiry; the plaintiffs and intervening plaintiff are not entitled to a lien against the vessel in accordance with 46 U.S.C. § 973.

### V.

Accordingly, judgment will be granted for the defendant dismissing the plaintiffs complaint and dismissing the intervening plaintiff's complaint.

Judgment will be entered accordingly.